DECISION AND JUDGMENT ENTRY
{¶ 1} Appellants, D'Ann Enterprises Inc. ("D'Ann) and Doris Jean Roberts, appeal from an order by the Ottawa County Court of Common Pleas denying the motion for summary judgment that was filed by appellants and granting the cross-motion for summary judgment that was filed by appellees, Nationwide Insurance Co. ("Nationwide") and William B. O'Keefe. For the reasons that follow, we affirm.
 {¶ 2} The facts giving rise to the instant appeal are as follows. On March 29, 1999, a fire occurred in the home of appellant Doris Roberts and her now-deceased husband, David Roberts. The Robertses submitted a claim for coverage under a homeowner's insurance policy issued by appellant Nationwide. The policy provided coverage for various losses to the Robertses' home, as well as liability coverage for certain other claims. The limit of Nationwide's liability under the policy was $88,000 for the dwelling and $61,000 for personal property.
 {¶ 3} Nationwide's adjuster, appellant William B. O'Keefe, approved work estimates in the amount of $57,791.99 for repairs to the dwelling. Altogether, Nationwide's payments on the claim totaled $104,118.35, with $66,023.45 of those payments allocated for the combined expenses of dwelling repair and debris removal, and the remaining $38,094.90 allocated for contents and personal property.
 {¶ 4} Documentation provided by Mrs. Roberts reflects that only $63,237.52 was ever paid to D'Ann. Not only was this amount less than that the $66,023.45 that was contributed by Nationwide for dwelling repair and debris removal, it included payments for additions and improvements that — although authorized by Roberts — were not covered under the Nationwide policy.
 {¶ 5} In the year following the fire, the relationship between the Robertses and D'Ann deteriorated. On July 20, 2000, the Robertses filed a complaint against D'Ann that alleged, among other things, that D'Ann "improperly installed and completed the work required to be performed by it," and that the work was performed "in an unworkmanlike and defective manner." The complaint also alleged that D'Ann had committed unfair, deceptive and unconscionable acts and practices in violation of R.C. 1345.
 {¶ 6} D'Ann filed a counterclaim, alleging that the Robertses had requested D'Ann's services, not just to repair the damage to their home, but also "to do certain remodeling work that was not damaged by the fire and to clean certain personal property damaged by the fire." According to the counterclaim, the Robertses had failed and refused to pay the $42,793.04 that was owed for the totality of those services.
 {¶ 7} The Robertses presented D'Ann's counterclaim to Nationwide for a defense under their homeowners' policy. Nationwide declined to defend the action, on the grounds that defense of the such claim was not covered under the policy.
 {¶ 8} In May 2002, following David Roberts's death and before trial in the case against D'Ann, Mrs. Roberts executed an assignment of her rights against Nationwide in favor of D'Ann. The assignment states that "[t]he limit of the insurer's liability under the policy was $88,000.00 Building," and further provides:
 {¶ 9} "Assignee shall not execute the excess portion of its judgment against assignor upon any of assignor's personal assets. If assignee obtains nothing, or less than expected, by its action against the insurer, assignee shall have no recourse against assignor under this agreement or by virtue of its judgment against assignor."
 {¶ 10} The matter went to trial on July 16, 2002. At the trial, Mrs. Roberts's counsel referenced the agreement and asserted that, as a result of that agreement, Mrs. Roberts would present no evidence in support of her claims and, further, would oppose no aspect of D'Ann's case. In a judgment entry file-stamped August 13, 2002, the trial court entered judgment for D'Ann, in the amount of $35,790.14.
 {¶ 11} On February 5, 2003, appellants Roberts and D'Ann filed the instant suit against Nationwide, with Mrs. Roberts seeking damages for emotional distress and punitive damages, and D'Ann, as assignee of one or both of the Robertses, seeking damages for breach of contract, negligence, bad faith, and unfair claims settlement practices. Appellants alleged in their complaint that after Nationwide rejected a tendered settlement offer of $30,000, the underlying matter proceeded to trial and resulted in a judgment against appellee Roberts in the amount of $42,793.04.[1] Appellants' claims, as set forth in the complaint, were premised solely upon Nationwide's failure to (1) assume the defense of the underlying counterclaim, and (2) fund a settlement of that counterclaim.[2]
 {¶ 12} In early 2004, appellants and appellees filed cross-motions for summary judgment. On July 7, 2004, the trial court entered judgment denying appellants' motion and granting appellees' motion. Appellants appeal from this judgment, and raise the following assignments of error:
 {¶ 13} "The trial court committed reversible error in granting summary judgment on the issue of Nationwide Insurance Company's duty to defend its policyholder for costs incurred by the policyholder as a result of a fire claim which is a covered loss under the contract of insurance."
 {¶ 14} "The trial court committed reversible error in granting summary judgment on the issue of whether judgment against the policyholder imposed a liability on the policyholder for matters that were within the coverage of the policy."
 {¶ 15} "The trial court committed reversible error in granting summary judgment on the issue of bad faith as courts almost always treat the determination of bad faith as a question for the trier of fact which is the `reasonable justification' standard set forth in Zoppo v. HomesteadIns. Co. (1994), 71 Ohio St.3d 552, 554, 1994 Ohio 461, 644 N.E.2d 397."
Summary judgment standard.
 {¶ 16} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Civ. R. 56(C) provides:
 {¶ 17} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as considered in this rule. * * *"
 {¶ 18} Summary judgment is proper where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party. Rybergv. Allstate Ins. Co. (July 12, 2001), 10th Dist. No. 00AP-1243, citingTokles Son, Inc. v. Midwestern Indemnity Co. (1992), 65 Ohio St.3d 621,629.
 {¶ 19} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to an essential element of one or more of the non-moving party's claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once this burden has been satisfied, the non-moving party has the burden, as set forth at Civ. R. 56(E), to offer specific facts showing a genuine issue for trial. Id.
Duty to defend.
 {¶ 20} An insurer's duty to defend arises where the allegations in a complaint against the insured state a claim that falls "either potentially or arguably within the liability insurance coverage."Willoughby Hills v. Cincinnati Ins. Co. (1984), 9 Ohio St.3d 177. On the other hand, where the alleged conduct is "indisputably outside the scope of coverage, there is no duty to defend." Cincinnati Ins. Co. v. Anders
(2003), 99 Ohio St.3d 156, at ¶ 51.
 {¶ 21} The grant of coverage for liability claims, as set forth in the Roberts' policy, is as follows:
 {¶ 22} "COVERAGE E — PERSONAL LIABILITY
 {¶ 23} "We will pay damages the insured is legally obligated to pay due to an occurrence.
 {¶ 24} "We will provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit. Our duty to defend a claim or suit ends when the amount we pay for damages equals our limit of liability."
 {¶ 25} The term "occurrence" is defined in the policy as "bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition." "Bodily injury" is defined as "bodily harm, sickness or disease, including resulting care, loss of services and death." "Property damage" is defined as "physical injury to or destruction of tangible property."
 {¶ 26} D'Ann's counterclaim against the Robertses contains the following allegations: (1) the Robertses requested that certain work be performed on the house, including both repair work that arose as a result of fire damage and remodeling work that was completely unrelated to the fire; (2) the parties agreed on a definite price for the work; (3) D'Ann performed the agreed-upon work; and (4) the Robertses failed to pay for the work. Such allegations — clearly couched in terms of a claim for breach of contract — do not, even arguably, state a claim for bodily injury or property damage caused by an accident. Because the conduct alleged in the counterclaim is indisputably outside the scope of the Robertses' coverage, Nationwide was under no duty to defend in this case.
Claim for additional damages.
 {¶ 27} To the extent that appellants claim additional damages for loss of property,[3] we find that recovery for such is explicitly barred by the terms of the Nationwide policy, wherein it is pertinently provided under the section listing the conditions for property coverage:
 {¶ 28} "7. Suit Against Us. No action can be brought unless there has been compliance with the policy provisions and the action is started within one year after the date of loss or damage."
 {¶ 29} The instant lawsuit was filed on January 30, 2003, more than one year after the fire at the Robertses' home on March 29, 1999. Thus, any claims for additional damages asserted in this case were untimely filed and are properly dismissed.
 {¶ 30} For all of the foregoing reasons, appellants' first and second assignments of error are found not well-taken.
Bad faith.
 {¶ 31} Appellants argue in their third assignment of error that summary judgment was improperly entered on the question of whether Nationwide acted in bad faith.
 {¶ 32} "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." Zoppov. Homestead Ins. Co. (1994), 71 Ohio St.3d 552, paragraph one of the syllabus.
 {¶ 33} In the instant case, Nationwide refused to defend the Robertses because the allegations in D'Ann's counterclaim failed to state a claim within the scope of the policy's coverage. "Obviously, if a reason for coverage denial is correct, it is per se reasonable." GRE Ins. Group v.Internatl. EPDM Rubber Roofing Systems, Inc. (Apr. 30, 1999), 6th Dist. No. L-98-1387. Because we have upheld Nationwide's coverage decision, it was per se reasonable, and, thus, not made in bad faith. See id.; Zoppo,
supra. On these facts, reasonable minds can come to but one conclusion, and that conclusion is adverse to appellants. See Ryberg, supra. Accordingly, appellants' third assignment of error is found not well-taken.[4]
 {¶ 34} For the foregoing reasons, the judgment of the Ottawa County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal for which sum judgment is rendered against appellants on behalf of Ottawa County and for which execution is awarded. See App. R. 24.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Singer, P.J., Skow, J., Parish, J., concur.
[1] Appellants' complaint is inaccurate with respect to the amount of the judgment entered against Mrs. Roberts. As indicated above, the judgment in the underlying suit was for $35,790.14.
[2] Appellants claim in their brief that appellees "duped" the Robertses into believing they were overcharged for work done by D'Ann and that some work was never done or was done in an unworkmanlike manner. Such claims were never raised in the trial court and, further, are completely unsupported by the evidence contained in the record. We, therefore, decline to give them further consideration.
[3] Appellants appear to claim additional damages based upon: (1) the agreed-upon judgment for $35,790.14 that was entered in D'Ann's case against the Robertses; and (2) appellants' counsel's statements that Nationwide's adjuster arbitrarily and capriciously underestimated the property loss in this case.
[4] The trial court had a different basis for granting summary judgment on the issue of bad faith. After citing caselaw establishing that an adjudicated, excess judgment is a prerequisite for bringing a claim for bad faith failure to settle, the trial court determined that the agreed judgment between the Robertses and D'Ann did not satisfy the prerequisite. Because we have already determined that Nationwide had absolutely no duty to defend in this case, any question about the propriety of the trial court's determination with respect to these narrower grounds is necessarily moot.