[Cite as *Holman v. Shiloh Grove Ltd. Partnership*, 2016-Ohio-2809.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

Jelmal Holman, :

   Appellant-Appellant, : No. 15AP-228
&
v. : No. 15AP-797
(C.P.C. No. 13CV-12129)

Shiloh Grove Limited Partnership et al., :

   Appellees-Appellees. : (REGULAR CALENDAR)

---

## D E C I S I O N

### Rendered on May 3, 2016

---

**On brief:** *Malek & Malek* and *Douglas C. Malek*, for appellant. **Argued:** *Douglas C. Malek*

**On brief:** *Michael DeWine*, Attorney General, and *Kevin J. Reis*, for appellee Administrator, Ohio Bureau of Workers' Compensation. **Argued:** *Kevin J. Reis*

---

APPEALS from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Appellant-appellant, Jelmal Holman, appeals from a judgment of the Franklin County Court of Common Pleas denying him the right to participate in the benefits of the Ohio Bureau of Workers' Compensation Fund (the "fund") for a medical condition he alleges resulted from a workplace injury. For the following reasons, we affirm.

### I. Facts and Procedural History

{¶ 2} On January 30, 2009, Holman sustained an injury in the course of and arising out of his employment with Shiloh Grove Limited Partnership ("Shiloh Grove"). The Industrial Commission of Ohio allowed the following medical conditions as part of Holman's workers' compensation claim: "contusion scalp (head); contusion neck; [and]

cervical sprain/strain."   (Complaint, exhibit B.)   The Industrial Commission denied Holman's request for the allowance of the following additional medical conditions: substantial aggravation of pre-existing disc herniation at C5-6, C6-7; substantial aggravation of pre-existing foraminal stenosis at C5-6, C6-7; and substantial aggravation of pre-existing degenerative disc disease at C5-6.

{¶ 3}   In December 2010, Holman appealed the denial of his request for the allowance of additional medical conditions to the Franklin County Court of Common Pleas.   In November 2012, defendants Administrator, Ohio Bureau of Workers' Compensation ("Administrator"), and Shiloh Grove moved to exclude the opinion and testimony of David Weaner, a high school physics teacher, based on Evid.R. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).   The trial court held a *Daubert* hearing on December 10, 2012.   Three days later, the trial court granted the motion and entered an order excluding the opinion and testimony of Weaner.   In January 2013, Holman voluntarily dismissed the action.

{¶ 4}   In November 2013, Holman refiled his appeal in the Franklin County Court of Common Pleas.   The trial court referred the matter to a magistrate pursuant to Civ.R. 53.  Before trial, the Administrator filed a motion in limine requesting the exclusion of "flow through" medical causation testimony.   The magistrate granted the Administrator's motion in limine, effectively limiting the issue for the jury to whether Holman's January 30, 2009 industrial injury caused a substantial aggravation of pre-existing degenerative disc disease at C5-6.   Consistent with this decision, the depositions of Stephen Altic, D.O., Kenneth Writesel, D.O., and Karl Kumler, M.D., were edited before their testimony was presented at trial.   Holman filed a motion in limine requesting the exclusion of the deposition testimony of either Dr. Writesel or Dr. Kumler on the basis that their testimony was cumulative.   The magistrate denied Holman's motion in limine. Additionally, and consistent with the trial court's earlier decision, the magistrate ruled that she would not permit Weaner to testify.

{¶ 5}   A jury trial commenced in February 2015 on the issue of Holman's request to participate in the fund for his alleged substantial aggravation of pre-existing degenerative disc disease at C5-6.  At trial, Holman testified that a falling "sheet of ice" struck him in the head, neck, and back as he was working as a maintenance employee at

Mount Vernon Plaza residential complex, which Shiloh Grove owns. (Feb. 2, 2015 Tr., 37.) Although Holman did not see the ice fall as he was walking away from the thirteen-floor building, he believed that the ice fell from the top of the building. Holman acknowledged that there is an awning near the exit of the building, but he testified that he was past the awning when the ice struck him. He also testified that surveillance video of the incident "showed the ice and the snow falling down from the top." (Feb. 2, 2015 Tr., 47.)

{¶ 6} The edited testimony of Holman's treating physician, Dr. Altic, was read into the record at trial. Dr. Altic testified that he saw Holman many times from his initial physical examination in May 2009 until July 2011. Holman had two MRIs performed, one in April 2009 and the other in February 2010. According to Dr. Altic, "[b]oth MRIs show degenerative [disc] disease at C5-6. However, the pathology in the 2010 MRI appears to be significantly worse than the previous MRI over a period of time * * * in which we wouldn't normally see that sort of pathology developing that quickly." (Altic Dep., 71.) Based on his review of the MRI reports, Dr. Altic opined that Holman had degenerative disc disease at C5-6 prior to January 30, 2009. Dr. Altic further opined that Holman's injury on January 30, 2009 substantially aggravated the pre-existing degenerative disc disease at C5-6.

{¶ 7} The edited videotaped depositions of Drs. Writesel and Kumler were played for the jury at trial. Dr. Writesel testified that he is board certified in geriatrics and emergency medicine and is board eligible in occupational medicine. Occupational medicine is a specialty devoted to "the evaluation and treatment of individuals that have been injured or have suffered illness in a workplace setting." (Writesel Dep., 11.) Dr. Writesel physically examined Holman in August 2010, and he reviewed Holman's medical records, including the MRI reports. Dr. Writesel opined that the injury Holman sustained on January 30, 2009 did not cause a substantial aggravation of the pre-existing degenerative disc disease at C5-6.

{¶ 8} Dr. Kumler is board certified in orthopedic surgery. Dr. Kumler physically examined Holman in February 2012, and he reviewed Holman's medical records, including the April 2009 and February 2010 MRI reports. Dr. Kumler opined that

Holman's January 30, 2009 injury did not substantially aggravate the pre-existing degenerative disc disease at C5-6.

{¶ 9}   A number of Holman's Mount Vernon Plaza co-workers testified regarding the circumstances surrounding the January 30, 2009 incident.   As pertinent here, Christopher Burns, a groundskeeper at Mount Vernon Plaza, testified regarding the accumulation of ice on the building.   Burns observed icicles, or other forms of ice accumulation, at various levels of the building, but he noted that they were "mainly * * * [at] the top of the building."  (Feb. 3, 2015 Tr., 136.)  Burns also testified that he had seen icicles that were up to two feet in length, but they varied in size.   Neither Burns nor any other testifying witness personally saw the frozen object strike Holman.  William Dutton, another groundskeeper at Mount Vernon Plaza, testified that he watched a surveillance video show "something" strike Holman, causing Holman to "go down to a knee."  (Feb. 3, 2015 Tr., 121.)

{¶ 10} After the presentation of evidence, the jury found that Holman is not entitled to participate in the fund for the condition of "substantial aggravation of pre-existing degenerative disc disease at C5-6" as a result of his January 30, 2009 injury. (Feb. 5, 2015 Verdict.)   On February 26, 2015, the trial court filed a judgment entry reflecting the jury's verdict.

{¶ 11} On March 23, 2015, Holman filed a motion for new trial.  Four days later, Holman filed a notice of appeal from the February 26, 2015 judgment entry.  In May 2015, this court remanded the matter, for the limited purpose of allowing the trial court to rule on the motion for new trial, and stayed the pending appeal.  In July 2015, the trial court denied Holman's motion for new trial.  Holman filed a notice of appeal from the denial of his motion for new trial.  This court consolidated the two appeals for purposes of briefing and oral argument.

## II.  Assignments of Error

{¶ 12}  Holman assigns the following errors for our review:[1]

[1.] The trial court erred on July 27, 2015, to the prejudice of Plaintiff-Appellant, Jelmal Holman ("Holman"), when it denied Holman's Motion for a New Trial.

[2.] The trial court erred on February 2, 2015 when it denied Holman's January 23, 2015 Motion in Limine, seeking to exclude cumulative expert testimony.

[3.] The trial court erred on February 2, 2015 when it granted Defendant-Appellee, Bureau of Workers' Compensation's ("BWC"), January 30, 2015 Motion in Limine, preventing the jury from addressing four of the five conditions noticed on appeal, disc herniations at C5-6 and C6-7 with foraminal stenosis at these same two levels.

[4.] The trial court erred to the prejudice of Holman on February 4, 2015 when it admitted the expert opinion testimony of BWC's expert physicians without also admitting records relied upon by these experts or admitting testimony made by these experts in discussing the clinical findings contained within these records.

[5.] [T]he trial court erred on December 13, 2012 and again on February 2, 2015, to the prejudice of Holman, when it excluded the opinion and testimony of David Weaner, a high school physics teacher.

## III.  Discussion

{¶ 13} For ease of discussion, we address Holman's assignments of error out of order, and we address related assignments of error together.  Holman's second, third, fourth, and fifth assignments of error address evidentiary issues.  Holman's first assignment of error challenges the trial court's denial of his motion for new trial.

### A.  Evidentiary Rulings

{¶ 14} The admission or exclusion of evidence is generally within the sound discretion of the trial court, and a reviewing court may reverse only on the showing of an abuse of that discretion.  *Peters v. Ohio State Lottery Comm.*, 63 Ohio St.3d 296, 299

---

[1] Because Holman presents his assignments of error in a narrative format, we separate and number the alleged errors.

(1992). The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

### 1. Holman's challenges to the admission of Drs. Kumler and Writesel's testimony

{¶ 15} In Holman's second assignment of error, he asserts the trial court erred in denying his motion in limine seeking to exclude cumulative expert testimony. Holman argues that the trial court erred in permitting both Drs. Kumler and Writesel to testify. We disagree.

{¶ 16} Evid.R. 403(B) provides that relevant evidence is not admissible if its probative value is substantially outweighed by consideration of undue delay or needless presentation of cumulative evidence, and a trial court has the discretion to exclude expert testimony where the testimony would not assist the trier of fact. *Bostic v. Connor*, 37 Ohio St.3d 144 (1988), paragraph three of the syllabus; *see State v. Campbell*, 69 Ohio St.3d 38, 51 (1994) ("Evid.R. 403(B) does not require exclusion of cumulative evidence. The court has discretion to admit or exclude it."). Cumulative evidence "is additional evidence of the same kind to the same point." *Smith v. Chatwood*, 2d Dist. No. 2618 (Aug. 15, 1990), citing *Kroger v. Ryan*, 83 Ohio St. 299 (1911), paragraph one of syllabus.

{¶ 17} Here, Holman argues that the testimony of Drs. Kumler and Writesel was unfairly cumulative. Holman contends that these physicians considered the same facts and reached the same conclusions regarding the condition at issue. Thus, according to Holman, the magistrate should have permitted only one of these physicians to testify. This argument is unpersuasive. To be sure, Drs. Kumler and Writesel both opined that Holman's injury on January 30, 2009 did not cause a substantial aggravation of pre-existing degenerative disc disease at C5-6; however, their agreement did not render the evidence needlessly cumulative. Each doctor physically examined Holman at different times and each has a different medical specialty. Dr. Kumler is an orthopedic surgeon, and Dr. Writesel has extensive experience in occupational medicine. Because the testimony of Drs. Kumler and Writesel were not needlessly cumulative, we find that the magistrate did not abuse her discretion by permitting both to testify.

{¶ 18} Accordingly, Holman's second assignment of error is overruled.

{¶ 19} Holman's fourth assignment of error alleges that the magistrate abused her discretion by allowing Drs. Writesel and Kumler to testify as to their opinions even though they relied on certain medical records not admitted into evidence. Holman also alleges that because the opinion testimony was permitted, the magistrate erred by refusing to admit into evidence all of the medical records they relied on in reaching their opinions. These arguments are unpersuasive.

{¶ 20} Holman argues that the magistrate should have excluded the opinions of Drs. Writesel and Kumler based on Evid.R. 703 because these physicians relied on medical records that were not admitted into evidence—the reports of Robert Dixon, D.O., and Roman Kovac, D.O. ("Dixon and Kovac reports"). Neither Dr. Dixon nor Dr. Kovac testified at trial. Evid.R. 703 specifies the permissible basis of expert opinion testimony. The rule states: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." The Supreme Court of Ohio has noted that "Evid.R. 703 is written in the disjunctive. Opinions may be based on perceptions or facts or data admitted in evidence." (Emphasis omitted.) *State v. Solomon*, 59 Ohio St.3d 124, 126 (1991). In *Solomon*, the Supreme Court concluded that, "[w]here an expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied." *Id.* at syllabus. The objecting party bears the burden of demonstrating that the expert principally relied on facts not admitted into evidence and not perceived by the expert. *Havanec v. Havanec*, 10th Dist. No. 08AP-465, 2008-Ohio-6966, ¶ 15, citing *Farkas v. Detar*, 126 Ohio App.3d 795 (9th Dist.1998).

{¶ 21} Here, Holman fails to demonstrate that Drs. Writesel and Kumler principally relied on facts not admitted into evidence and not perceived by them. As noted above, both of these physicians personally examined Holman. Additionally, although Drs. Writesel and Kumler both testified that they reviewed the Dixon and Kovac reports as part of their review of Holman's medical records, they did not indicate that the information contained therein was the basis of their opinions regarding the alleged substantial aggravation of pre-existing degenerative disc disease at C5-6. To the contrary, the testimony of Drs. Writesel and Kumler indicate that both primarily relied on the MRI reports and their own examination of Holman in reaching their opinions regarding the

alleged substantial aggravation of pre-existing degenerative disc disease at C5-6. Therefore, we find that the magistrate did not abuse her discretion in permitting Drs. Writesel and Kumler's opinion testimony despite the non-admission of the Dixon and Kovac reports.

{¶ 22} Holman's challenge to the magistrate's decision to exclude the Dixon and Kovac reports as inadmissible hearsay is also unavailing. Hearsay is an out-of-court statement offered for the truth of the matter asserted, and hearsay is generally not admissible. Evid.R. 801(C) and 802. There are exceptions to the hearsay rule, however, and those exceptions are listed in Evid.R. 803 and 804. While Holman asserts that the Dixon and Kovac reports were admissible, he does not present any argument explaining why the magistrate erroneously concluded that the reports were inadmissible hearsay. In the absence of such an explanation, this argument fails. *See, e.g.*, *Bank of New York v. Barclay*, 10th Dist. No. 04AP-48, 2004-Ohio-4555, ¶ 10 (undeveloped arguments normally cannot form the basis for reversing a trial court's judgment).

{¶ 23} For these reasons, we overrule Holman's fourth assignment of error.

### 2. Granting of the Administrator's motion to exclude evidence regarding additional requested "flow through" conditions

{¶ 24} In his third assignment of error, Holman asserts the trial court erred in granting the Administrator's motion to exclude medical evidence regarding four of the five additional conditions he requested. Holman argues that evidence regarding all of the additional requested conditions should have been presented to the jury. This assignment of error is without merit.

{¶ 25} In addition to seeking the allowance for the condition of substantial aggravation of pre-existing degenerative disc disease at C5-6, Holman sought the allowance of additional conditions based on a "flow through" theory of causation. A "flow through" injury is generally defined as an injury that subsequently develops in a body part not originally alleged under R.C. 4123.84(A)(1). *Click v. S. Ohio Corr. Facility*, 152 Ohio App.3d 560, 2003-Ohio-2208, ¶ 9 (4th Dist.), citing *Dent v. AT&T Technologies, Inc.*, 38 Ohio St.3d 187 (1988). Whether a flow through injury is compensable depends on the existence of a direct or proximate causal relationship between the previously allowed

injury and the claimant's flow through injury. *Kenyon v. Scott Fetzer Co.*, 113 Ohio App.3d 264, 266 (8th Dist.1996).

{¶ 26} Here, Dr. Altic testified at his deposition that the substantial aggravation of the pre-existing degenerative disc disease at C5-6 caused the other requested conditions. Consequently, Holman's theory was that his workplace injury caused the substantial aggravation of the pre-existing degenerative disc disease at C5-6, and that the C5-6 aggravation caused four other compensable conditions. As explained above, the magistrate limited the issues at trial to the question of whether the workplace injury caused the substantial aggravation of the pre-existing degenerative disc disease at C5-6. Based on this ruling, Dr. Altic's deposition transcript was edited and read to the jury, and Drs. Kumler and Writesel's video depositions were edited and played for the jury.

{¶ 27} Holman concedes that the jury would have had to find the substantial aggravation of the pre-existing degenerative disc disease at C5-6 in order to conclude the C5-6 aggravation caused the "flow through" injuries requested. Thus, the jury's finding that Holman is not entitled to participate in the fund for the condition of substantial aggravation of pre-existing degenerative disc disease at C5-6 necessarily precluded Holman from participating in the fund for the other requested additional conditions. Holman acknowledges this conclusion but argues that he was prejudiced because the edited testimony of the physicians resulted in confusing evidence. Holman also argues that timing of the decision to limit the testimony to the C5-6 aggravation prejudiced him because it required an alteration to his strategy at trial. These arguments are unpersuasive.

{¶ 28} Holman does not explain how the magistrate's editing of the transcripts prejudiced him. Upon our review of the transcripts, we find that the magistrate carefully edited the transcripts consistent with her rulings. While we agree with Holman insofar as he asserts that the some of the testimony was disjointed because of the editing, we are unconvinced that such minor fragmentation was prejudicial to Holman. At least some degree of fragmentation is inevitable when a trial deposition is edited prior to its presentation to the trier of fact. Furthermore, while Holman generally argues that the magistrate's limitation of the case to one condition altered his approach at trial, he does not explain how the limitation precluded him from prosecuting his case as it related to

that condition.  Thus, we conclude that the magistrate's editing of the physicians' depositions did not prejudice Holman.

{¶ 29} Accordingly, we overrule Holman's third assignment of error.

### 3.  Exclusion of testimony of high school physics teacher David Weaner

{¶ 30} In his fifth assignment of error, Holman asserts the trial court erred in excluding the opinion and testimony of David Weaner, a high school physics teacher. Holman argues that the trial court abused its discretion by not permitting Weaner to testify as an expert because he could have explained to the jury the forces involved with falling ice striking a fixed object.  This assignment of error lacks merit.

{¶ 31} A fundamental problem with Weaner's proposed testimony was that it relied on assumed facts that were largely speculative.  Based on testimony at trial, certain basic facts regarding Holman's injury were undisputed.  On January 30, 2009, Holman was struck by falling ice or snow, or a combination of both, as he walked away from the thirteen-floor building at Mount Vernon Plaza.  Other circumstances of the incident were unclear.  For example, evidence was conflicting regarding the path of the frozen object as it descended.  Holman testified that he was past the awning when he was struck, and thus the frozen object could not have come from the awning.  But Dr. Writesel testified that Holman told him that the object fell, ricocheted off the awning, and then struck him. Moreover, no one at trial testified regarding the dimensions of the frozen object that struck Holman.

{¶ 32} It is a basic physics principle that force equals mass times acceleration. Thus, if either mass or acceleration is unknown, then force is also unknown.  Holman addresses the absence of any testimony indicating the dimensions of the frozen object that struck him by referring to general testimony regarding the formation of icicles at Mount Vernon Plaza.  Holman asserts that Burns testified regarding the location and size of icicles on Mount Vernon Plaza and that he had previously witnessed icicles fall off the building to the ground.  Indeed, Burns testified that he had observed icicles, or other ice accumulation, at various levels of the building, and he noted that the icicles usually were located at the top of the building.  Burns testified that he had seen icicles that were up to two feet in length, and he acknowledged that the icicles varied in size.  Thus, Burns' testimony simply outlined the types of ice accumulation that he had generally observed at

Mount Vernon Plaza.  But Burns' testimony did not provide a reasonably limited framework in which a physicist could determine the impact force of the actual frozen object that struck Holman.  Under these circumstances, the magistrate reasonably concluded that the information on which Weaner based his testimony was impermissibly speculative.

{¶ 33} Because the magistrate did not abuse her discretion in excluding Weaner's testimony, we overrule Holman's fifth assignment of error.

### B.  Denial of motion for new trial

{¶ 34} Holman's first assignment of error alleges the trial court erred in denying his motion for new trial pursuant to Civ.R. 59(A).  Although Holman assigns as error the trial court's denial of his motion for new trial, he does not separately set forth arguments directly addressing his first assignment of error.  Instead, it appears Holman relies on the arguments set forth in support of his other assignments of error to demonstrate the trial court abused its discretion in denying his motion for new trial.  Thus, we construe Holman's first assignment of error as incorporating his other assignments of error related to the trial court proceedings.  For the reasons expressed in response to Holman's second, third, fourth, and fifth assignments of error, we find the trial court did not abuse its discretion in denying Holman's motion for new trial.  Therefore, his first assignment of error is overruled.

## IV.  Disposition

{¶ 35} Having overruled Holman's five assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and KLATT, JJ., concur.