[Cite as *Thombre v. Grange Ins. Co.*, 2021-Ohio-3998.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Prakash S. Thombre

    Appellant

v.

Grange Insurance Company

    Appellee

Court of Appeals No.  L-21-1014

Trial Court No.  CI0202002560

**DECISION AND JUDGMENT**

Decided:

* * * * *

Prakash S. Thombre, pro se.

Mark H. Gams and Andrew J. Kielkopf, for appellee.

* * * * *

**MAYLE, J.**

## Introduction

{¶ 1} This case involves a dispute over a homeowner's insurance policy between the plaintiff-appellant, Prakash Thombre, and the defendant-appellee, Grange Insurance Company.  Grange denied Thombre's claim to repair his foundation wall after an expert,

hired by the company, advised it that the damage—consisting of displacement and cracking—was caused by the long term effects of hydrostatic and earth pressure, which the policy excluded from coverage. The Lucas County Court of Common Pleas granted Grange's motion for summary judgment, and Thombre appealed. As set forth below, we affirm the trial court's judgment.

## Background

{¶ 2} In his complaint, Thombre alleged that a "strong wind" in March of 2019 caused a foundation wall of his Oregon, Ohio home "to move [off] its base support." Specifically, Thombre alleged that the "center portion of the west wall of [his] house * * * moved out about 6 to 8 inches." Thombre first noticed that the wall was "protruding" in "June/July" of 2019 and made a claim with Grange on July 5, 2019.[1]

{¶ 3} Grange retained an independent insurance adjuster who performed a physical inspection of the property on July 19, 2019. The adjuster reported that, "upon inspection, we found that ground water and soil i [sic] are placing pressure on the foundation at the right elevation. The basement foundation is buckling inward from the pressure and causing the [cement] blocks to crack." Based upon the report, Grange advised Thombre that it was denying the claim because the policy specifically excluded coverage for "damage[] caused by ground water or earth movement."

---

[1] Thombre claimed that the same wind event caused damage to his roof. That part of the claim was resolved separately and is not an issue before us. (Lucas County Court of Common Pleas case No. 2019-3971).

2.

{¶ 4} Thombre disputed the adjuster's finding. In response, Grange retained an engineering firm, EES Group. Bryan Knepper, a professional engineer with EES, conducted a second inspection on August 6, 2019. Knepper concurred that the damage was caused by "long-term effects of hydrostatic and earth pressures." Grange then advised Thombre that its prior coverage determination would be maintained.

{¶ 5} Acting pro se, Thombre filed suit on July 17, 2020, alleging that Grange violated the terms of the homeowner's policy by denying the claim. Thombre also moved for summary judgment and attached to his motion a report from Larry Fast, a professional engineer. According to the report, the type of damages sustained to Thombre's foundation "would be typical of tornado winds which cause uplifts and lateral movements. They are not the type of damages found from backfill pressures." Thombre's motion also asserted claims—for the first time—for bad faith and punitive damages.

{¶ 6} Grange filed its own motion for summary judgment and opposed Thombre's motion. Grange argued that the Fast report could not be considered under Civ.R. 56(C) because it was not supported by an affidavit. Grange also argued that it was entitled to judgment as a matter of law, based upon the properly admitted evidence from its expert, Bryan Knepper. By separate motion, Grange also argued that Thombre failed to present any evidence in support of his bad faith and punitive damages claims.

3.

**{¶ 7}** By judgment entry dated January 15, 2021, the trial court granted Grange's motions for summary judgment as to all claims asserted against it. Thombre appealed. Acting sua sponte, we remanded the case back to the trial court for issuance of a final appealable order, which was entered on February 26, 2021.

**{¶ 8}** Thombre, again acting pro se, asserts the following assignment of error for our review:

> The Court bought the Defendant's contorted argument to divert from the wind damages to the house west wall, and focused on a unqualified persons report so they can say this basement wall cracks not covered by the contract. [Sic.]

### Law and Analysis

**{¶ 9}** Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). A de novo review requires the appellate court to

4.

conduct an independent review of the evidence before the trial court, without deference to the trial court's decision.  *Id.*

{¶ 10} A party moving for summary judgment "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims."  *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996).  If this initial burden is met, the nonmoving party then bears the reciprocal burden to set forth specific facts showing that a genuine issue remains to be litigated.  *Id.* at 292–293, citing Civ.R. 56(E).

### 1.  The trial court properly excluded Thombre's expert report.

{¶ 11} Thombre raises several arguments in support of his appeal.  First, he complains that the trial court failed to "read" the report from his expert, Larry Fast.

{¶ 12} Civ.R. 56(C) specifies what evidence may be considered when deciding a motion for summary judgment.  Such evidence includes the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any."  Documents that do not fall into any of those categories may still be considered in a summary judgment proceeding if they are introduced by a properly framed affidavit.  *See, e.g., Bank of Am., N.A. v. Duran*, 6th Dist. Lucas No. L-14-1031, 2015-Ohio-630, ¶ 45 quoting *Carlton v. Davisson,* 104 Ohio App.3d 636, 646-647, 662 N.E.2d 1112 (6th Dist.1995) ("Where the copy of a document

5.

falls outside [Civ.R. 56(C)], the correct method for introducing it is to incorporate [it] by reference into a properly framed affidavit.").

{¶ 13} Civ.R. 56(E) governs the use of affidavits in a summary judgment proceeding. It provides,

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. *Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit*. (Emphasis added.)

{¶ 14} The Fast report does not fit within any of the categories described in Civ.R. 56(C). Therefore, in order to comply with the rule, Thombre was required to submit a properly authenticated affidavit that incorporated and attached that report. Thombre failed to do so. "Documents submitted in opposition to a motion for summary judgment [that] are not sworn, certified, or authenticated by affidavit have no evidentiary value and may not be considered by the court in deciding whether a genuine issue of material fact remains for trial." *Battaglia v. Conrail*, 6th Dist. Lucas No. L-08-1332, 2009-Ohio-5505, ¶ 42, quoting *Green v. B.F. Goodrich Co.*, 85 Ohio App.3d 223, 228, 619 N.E.2d 497 (9th Dist.1993); *see also* Civ.R. 56(C) ("No evidence or stipulation may be considered except as stated in [this rule].").

6.

{¶ 15} And, although the Ohio Supreme Court has held that a court retains discretion to consider evidence that is not specified in Civ.R. 56(C), it may only exercise that discretion if the opposing party does not object to the improper evidence. *State ex rel. Gilmour Realty, Inc. v. City of Mayfield Heights*, 122 Ohio St.3d 260, 2009-Ohio-2871, 910 N.E.2d 455, ¶ 17 ("Although appellees did not support these pertinent facts with evidence of the kinds specified in Civ.R. 56(C), courts may consider other evidence if there is no objection on this basis."). Here, Grange promptly objected to Thombre's attempt to "intersperse" Fast's report without an accompanying affidavit that complied with Civ.R. 56. Rather than correct the error, Thombre merely refiled the report. On appeal, Thombre calls the filing requirement "some archiak technical[ity]." [Sic].

{¶ 16} Pro se litigants are presumed to have knowledge of the law and of the correct legal procedure and are held to the same standard as all other litigants. *See, e.g., Kilroy v. B.H. Lakeshore Co.,* 111 Ohio App.3d 357, 676 N.E.2d 171 (6th Dist.1996). They are not accorded greater rights and must accept the results of their own mistakes. *Id*. We find that the trial court properly refused to consider the Fast report.

**2. The trial court properly considered Grange's expert report**.

{¶ 17} Next, Thombre argues that the trial court erred when it considered the opinion of Grange's expert, Bryan Knepper, whom Thombre alleges was "unqualified" to render an opinion in this case.

7.

{¶ 18} A witness is not presumed to be an expert, and the party offering the testimony has the burden to show that the witness has the qualifications to testify as an expert. *Hartman v. Erie Ins. Co.,* 6th Dist. Wood No. WD-16-022, 2017-Ohio-668, ¶ 61-63 citing *Tully v. Mahoning Exp. Co.*, 161 Ohio St. 457, 119 N.E.2d 831 (1954), paragraph two of the syllabus. The trial court acts as a gatekeeper and must determine if the expert's methodology for formulating his expert opinion is reliable and the opinion testimony is relevant before allowing the expert to testify. *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, 875 N.E.2d 72, ¶ 24. The expert does not have to be the most knowledgeable expert. *Hartman* at ¶ 61. Qualification of an expert is a matter within the sound discretion of the trial court, and the trial court's ruling will not be reversed absent a showing of an abuse of discretion. Evid. R. 104(a); *Celmer v. Rodgers*, 114 Ohio St.3d 221, 2007-Ohio-3697, 871 N.E.2d 557, ¶ 19.

{¶ 19} For summary judgment purposes, an expert's affidavit must include the supporting facts upon which the expert's opinions are based and cannot state merely legal conclusions. *Hartman* at ¶ 63, citing *Nu-Trend Homes, Inc. v. Law Offices of DeLibera, Lyons, & Bibbo*, 10th Dist. Franklin No. 01AP-1137, 2003-Ohio-1633, ¶ 59; Civ.R 56(E). The expert must also render an opinion to a reasonable degree of scientific certainty. *State v. Jackson*, 92 Ohio St.3d 436, 448, 751 N.E.2d 946 (2001).

{¶ 20} According to his resume, Knepper is a "structural/mechanical engineer" with over 19 years of experience and holds professional engineering licenses in Ohio,

8.

Michigan, and Indiana. His many areas of expertise include conducting inspections and assessments for purposes of determining the cause(s) of damage to "structural framing and foundation systems" and "exterior wall failures." Knepper's 15-page report in this case describes, in detail, his study of the property's history, his observations of the damaged wall and surrounding areas, and his conclusions. According to Knepper,

> The cracks and movement to the west foundation wall [were] likely due to the method of construction which rendered it susceptible to the long-term effects of hydrostatic and earth pressures. Specifically, due to the lack of vertical steel reinforcement and/or grout, over time the imposed lateral loads exceeded the resistance capacity of the west foundation wall. The movement/cracking of the wall was likely progressive in nature. The cracking/displacement was likely exacerbated by poor drainage conditions along the west foundation wall. * * * Minor cracks were present within the western ends of the north and south foundation walls resulting from the effects of the lateral loads of the west foundation wall. * * * The conclusions reached were determined within a reasonable degree of engineering certainty.

{¶ 21} In compliance with Civ.R. 56(C), Knepper's resume and report were attached and incorporated by sworn affidavit, and all were submitted in support of

Grange's motion for summary judgment. In the affidavit, Knepper also specifically rejected wind as a cause of the damage to Thombre's foundation.

{¶ 22} The party opposing an expert's opinion bears the burden of proving that the opinions are unsupported. *Holman v. Shiloh Grove L.P.*, 10th Dist. Franklin Nos. 15AP-228, 15AP-797, 2016-Ohio-2809, ¶ 20. Here, Thombre offers only insults, calling Knepper a "so called" professional engineer and his firm a "noncertified group of roofers." Thombre does not, however, challenge any of the facts upon which Knepper's expert opinion is based.

{¶ 23} We find that Grange met its burden to show that its expert was qualified to render an opinion in this case, and that opinion was unrebutted by Thombre. We further find that the trial court did not abuse its discretion in considering Knepper's affidavit and attachments.

### 3. Grange did not breach the homeowner's policy

{¶ 24} Next, Thombre argues that Grange breached the homeowner's policy by declining coverage for damage to his foundation and that the trial court erred by concluding otherwise. We disagree.

{¶ 25} To recover upon a breach of contract claim, a plaintiff must prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Harris v. Transamerica Advisors Life Ins. Co.*, 6th Dist. Lucas No. L-15-1252, 2017-Ohio-341, ¶ 22. An insurance policy is a contract, and its

10.

construction is interpreted as a matter of law. *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 374 N.E.2d 146 (1978). "A policy of insurance is a contract and like any other contract is to be given a reasonable construction in conformity with the *intention of the parties* as gathered from the ordinary and commonly understood meaning of the language employed." (Internal quotation marks and citations omitted; Emphasis sic.) *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 549, 757 N.E.2d 329.   Thus, to defeat coverage, "the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language in question."  (Internal quotation marks and citations omitted.) *Id.*

{¶ 26} Here, Grange argues that summary judgment was proper because its policy excludes property losses that are caused by "water damage" or "earth movement."  The relevant policy provisions state:

> SECTION I- PROPERTY PROTECTION * * * PROPERTY LOSSES WE DO NOT COVER
>
> **A.  Building and Personal Property Losses We Do Not Cover**
>
> **We** do not cover loss resulting directly or indirectly by any of the following under any **Section I – Property Protection** property **we** cover.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. * * *

11.

2. *Earth movement* caused by or resulting from human or animal forces or any act of nature. Earth movement includes, but is not limited to earthquake, landslide, mine subsidence, mudflow, mudslide, earth sinking, rising, expanding, shifting, contracting, freezing, erosion, hydraulic fracturing or fracking or movement resulting from improper compaction or site selection. **We** do cover direct loss that follows caused by fire, explosion or breakage of glass, provided the resulting fire, explosion or breakage of glass loss is itself a covered loss.

* * *

4. *Water damage caused by or resulting from deterioration, human, mechanical, or animal forces or any act of nature, meaning*: * * *

d. *Water or water-borne material below the surface of the ground. This includes water which exerts pressure on* or flows, seeps, or leaks through *any part of a building or other structure, including but not limited to* patios, sidewalks, driveways, *foundations* or swimming pools.

(Emphasis added in italics; original emphasis in bold).

**B. Building Property Losses We Do Not Cover**

In addition to the **Property Losses We Do Not Cover** in **A.1**. through **A.15**. above that apply to all Section I coverages, **we** do not insure for loss

to property described in **Coverage A – Dwelling** and **Coverage B- Other Structures** caused directly or indirectly by any of the following:

1. * * *

f. Settling, shrinkage, bulging or expansion, including resultant cracking of * * * foundations [or] walls * * *.

* * *

7. Defect, fault, inadequacy, weakness, or unsoundness in:

a. Planning, zoning, development, surveying, siting;

b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c. Materials used in repair, construction, renovation or remodeling. This applies even if the material serves the purposes for which it was manufactured, but its properties contribute, directly or indirectly to its loss, devaluation, or destruction, or the loss, devaluation or destruction of other material or property; or

d. Maintenance.

{¶ 27} We will address Grange's arguments relating to the "water damage" exclusion first. Section (I)(A)(4)(d) of the policy clearly and unambiguously excludes claims for loss resulting from "water damage," which the policy defines as "water or water-borne material below the surface of the ground [including] water which exerts

pressure on * * * any part of a building * * * including * * * foundations." According to Knepper, the displacement of the west wall and the resultant cracks were likely due to the long-term effects of "earth pressure" and "hydrostatic pressure." Knepper's report defines "hydrostatic pressure" as a type of "lateral pressure" that is "generated by an accumulation of un-drained groundwater." During his inspection of Thombre's home, Knepper observed an accumulation of surface and ground water, poor drainage along the perimeter, and the absence of vertical steel reinforcement or grout during the construction phase—all of which made the foundation susceptible to the long-term effect of hydrostatic and earth pressure. As noted by Grange, the policy also specifically excludes coverage for loss caused by "settling * * * including resultant cracking of * * * foundations" or loss caused by "defect, fault, inadequacy, weakness or unsoundness * * * [in] design [or] construction."

{¶ 28} When a properly-supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). And, because the issue in this case involves a "highly technical question of science or art or to a particular professional or mechanical skill," expert testimony was required. *Jones v. Hawkes Hosp.* 175 Ohio St. 503, 196 N.E.2d 592 (1963), paragraph one of the syllabus;

14.

*see also, King v. Am. Family Ins.,* 11th Dist. Trumbull No. 2016-T-096, 2017-Ohio-5514, ¶ 21 ("[E]xpert testimony clarifies the often complex causes of structural damage.").

{¶ 29} Here, Thombre offers no specific facts demonstrating that a genuine issue of material fact remains for trial. Instead, he advances two unsupported theories: (1) a wind event caused his wall to protrude and (2) earth pressure could not have caused the damage because the wall would have continued to move or even collapse. Thombre's problem is that he offers no evidence to support these claims.

{¶ 30} Grange's unrefuted evidence demonstrated that subsurface water or water-saturated-earth exerted pressure on Thombre's foundation wall, which caused it to move and crack. This type of event is specifically excluded by the water damage exclusion. *Accord Shanton v. United Ohio Ins. Co.,* 4th Dist. Pike No. 07CA766, 2007-Ohio-6379, ¶ 12 (Damage caused by water that leaked from burst underground pipe was precluded where policy excluded coverage for "water damage," defined as "water below the surface of the ground, including water that exerts pressure on or seeps through a building, sidewalk, driveway, foundation * * * or other structure.").

{¶ 31} Given that the damage to Thombre's foundation is excluded by the "water damage" exclusion of the policy, we need not address Grange's arguments relating to the "earth movement" exclusion of that same policy. *Accord Shanton* at ¶ 13. We therefore find that the trial court properly granted summary judgment to Grange on Thombre's breach of contract claim.

15.

**4. The trial court properly granted summary judgment to Grange as to Thombre's bad faith and punitive damages claims.**

{¶ 32} Finally, we must address the trial court's decision to grant summary judgment to Grange on Thombre's claims for bad faith and punitive damages.

{¶ 33} In Ohio, an insurer has a duty to its insured to act in good faith in the handling and payment of an insured's claims. *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983), paragraph two of the syllabus. "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994), paragraph one of the syllabus. "Obviously, if a reason for coverage denial is correct, it is per se reasonable." *D'Ann Ent. Inc. v. Nationwide Ins. Co.,* 6th Dist. Ottawa No. OT-04-031, 2005-Ohio-4879, ¶ 32-33 quoting *GRE Ins. Group v. Internatl. EPDM Rubber Roofing Sys, Inc.*, 6th Dist. No. L-98-1387 (Apr. 30, 1999).

{¶ 34} Because we have upheld Grange's decision to deny coverage in this case, it was per se reasonable, and, thus, not made in bad faith. *Id.* For this same reason, Thombre's claim for punitive damages is also precluded as a matter of law. *Terrill v. State Farm Mut. Auto. Ins. Co.,* 6th Dist. Lucas No. L-97-1007, 1998WL161193 (Mar. 31, 1998).

16.

**Conclusion**

**{¶ 35}** In sum, the trial court properly granted summary judgment to Grange on Thombre's claims for breach of contract, bad faith, and punitive damages. We therefore find Thombre's sole assignment of error not well-taken, and we affirm the trial court's judgment. Pursuant to App.R. 24, Thombre is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Christine E. Mayle, J.

Myron C. Duhart, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.