[Cite as *R.T. v. Knobeloch*, 2018-Ohio-2734.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| R.T. et al., | : | |
| Plaintiffs-Appellees, | : | |
| v. | : | No. 16AP-809 |
| | | (C.P.C. No. 14CV-4879) |
| William Knobeloch, M.D. et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on July 12, 2018

*Hale Westfall LLP, Allan L. Hale* and *Peter J. Krumholz; Burg Simpson Eldredge Hersh & Jardine, P.C.,* and *Janet G. Abaray*, for appellees.

*Arnold Todaro & Welch Co., L.P.A., Grier D. Schaffer* and *Gregory B. Foliano*, for appellants.

ON MOTION TO CERTIFY A CONFLICT

TYACK, J.

{¶ 1} Defendants-appellants, William Knobeloch, M.D. et al. ("appellants"), ask this court to certify two conflicts between our decision *R.T. v. Knobeloch*, 10th Dist. No. 16AP-809, 2018-Ohio-1596, *Hunt v. Crossroads Psychiatric & Psychological Ctr.*, 8th Dist. No. 79120 (Dec. 6, 2001), and *Culp v. Olukoga,* 4th Dist. No. 12CA3470, 2013-Ohio-5211. For the reasons that follow, we deny the motion.

## I. LEGAL STANDARD

{¶ 2} Article IV, Section 3(B)(4) of the Ohio Constitution governs motions seeking an order to certify a conflict. It provides as follows:

> Whenever the judges of a court of appeals find that a judgment
> upon which they have agreed is in conflict with a judgment

> pronounced upon the same question by any other court of appeals of the state, the judges shall certify the record of the case to the supreme court for review and final determination.

*See also Whitelock v. Gilbane Bldg. Co.*, 66 Ohio St.3d 594 (1993), syllabus, *rehearing denied* by *Whitelock v. Cleveland Clinic Found.*, 67 Ohio St.3d 1420 (1993).

{¶ 3} In *Whitelock*, the Supreme Court of Ohio held that, pursuant to Article IV, Section 3(B)(4) of the Ohio Constitution and S.Ct.Prac.R. III, "there must be an actual conflict between appellate judicial districts on a rule of law before certification of a case to the Supreme Court for review and final determination is proper." *Id.* at paragraph one of the syllabus. The Supreme Court further stated:

> [A]t least three conditions must be met before and during the certification of a case to this court pursuant to Section 3(B)(4), Article IV of the Ohio Constitution. First, the certifying court must find that its judgment is in conflict with the judgment of a court of appeals of another district and the asserted conflict *must* be "upon the same question." Second, the alleged conflict must be on a rule of law—not facts. Third, the journal entry or opinion of the certifying court must clearly set forth that rule of law which the certifying court contends is in conflict with the judgment on the same question by other district courts of appeals.

(Emphasis sic.) *Id.* at 596. It is important to note that factual distinctions between cases are not a basis upon which to certify a conflict. It is not enough that the reasoning expressed in the opinions of the two courts of appeals be inconsistent; the judgments of the two courts must be in conflict. *Accord, Estate of Aukland v. Broadview NH, LLC,* 10th Dist. No. 16AP-661, 2017-Ohio-7332, ¶ 9.

{¶ 4} App.R. 25 governs motions to certify a conflict and provides that "[a] motion under this rule shall specify the issue proposed for certification and shall cite the judgment or judgments alleged to be in conflict with the judgment of the court in which the motion is filed." Moreover, Loc.R. 14 of the Tenth District Court of Appeals provides, in pertinent part, as follows:

> The motion to certify shall set forth specifically the rule of law upon which the alleged conflict exists in such form that could be set forth in a journal entry in accordance with S.Ct. Prac. R. 8.02(B), in the event the motion is granted.

## II. ALLEGED CONFLICT

{¶ 5} We note that appellants have failed to comply with the local rule. With respect to the first alleged conflict, appellants state that "[t]he conflict in judgments with the instant case concerns the minimum threshold of legal competency for a medical liability expert pursuant to Evid. R. 601(D)." (May 4, 2018 Mot. to Certify at 3.) Appellants further assert that this court found that an expert can qualify under Evid.R. 601(D) without expressly showing the minimum time requirements set forth in Evid.R. 601(D), whereas the judgment in *Hunt* requires that the 50 percent rule be met.

{¶ 6} With respect to the second alleged conflict, appellants state that "[t]he conflict in Judgments in this instant case is whether a physician's testimony is legally necessary to establish all elements of an informed consent claim where no informed consent is allegedly given." (Mot. to Certify at 7.)

{¶ 7} In spite of the failure to set forth the specific rule of law on which the alleged conflict exists, we shall address the arguments raised by appellants.

## III. FACTUAL BACKGROUND

{¶ 8} The background of this medical malpractice, lack of informed consent case is set forth in the *R.T. v. Knobeloch* decision. However, the following facts are pertinent to the motion to certify.

{¶ 9} On appeal to this court, appellants argued that Alan Kaye, M.D., and David E. Arredondo, M.D., were not competent to testify as experts under Evid.R. 601(D) because they did not devote at least one-half of their professional time to active clinical practice in their field of licensure or to its instruction in an accredited school.

{¶ 10} Dr. Arredondo testified for appellees as an expert in pediatric psychiatry. Dr. Arredondo is board certified in psychiatry and neurology, and has been in continuous clinical practice from 1980 until the present with at least some of his practice in adolescent and child psychiatry.

{¶ 11} Dr. Kaye testified on behalf of appellees as an expert in the field of pharmacology and drugs. He is board certified in anesthesia and pain management, and is a professor of pharmacology and anesthesia at Tulane University Medical Center. In addition to his medical degree, Dr. Kaye holds a doctorate degree in pharmacology. (Tr. 536.) Before trial, appellees moved to exclude his testimony on the grounds that his

opinions were speculative and not reliable, and therefore did not meet the standards of Evid.R. 702 and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). (Apr. 7, 2016 Mot. to Exclude Opinion Testimony.) Appellees also moved to exclude Dr. Kaye from testifying as to the pediatric standard of care, specifically any opinions as to the diagnosis and treatment of pediatric bipolar disorder, the prescription of medications for its treatment, or for the diagnosis of Stevens Johnson Syndrome. (Apr. 11, 2016 Reply Memo.) Appellants claimed that Dr. Kaye's anesthesiology practice did not qualify him to opine as to the pediatric standard of care.

{¶ 12} On April 22, 2016, the trial court agreed in part with appellants and limited Dr. Kaye's testimony. The trial court noted that Dr. Kaye was not a practicing pediatrician or psychiatrist. The trial court found that Dr. Kaye did not have the necessary specialized knowledge to qualify as an expert under Evid.R. 702 to render standard of care opinions on the issues of whether Dr. Knobeloch should have referred S.T. to a pediatric psychiatrist; that S.T. did not have bipolar disorder; and that Dr. Knobeloch improperly prescribed Lamictal when the drug has no indication for pediatric bipolar disorder.

{¶ 13} At trial and out of the presence of the jury, the trial court summarized its rulings before Dr. Kaye testified:

> The Court issued a ruling on May the 11th and April 22nd. The April 22nd ruling limits his testimony with regard to improper diagnosis of Dr. Knobeloch with regard to bipolar disorder. He's [ ] not a psychiatrist. He's not a pediatrician. The Court found on the given state of the record that he did not have the expertise required to render an opinion.
>
> He is qualified to testify that Lamictal has no indication for pediatric bipolar disorder, but the Court agrees that he cannot opine or give an opinion about whether or not Dr. Knobeloch breached the standard of pediatric care.
>
> The Court did indicate that he had the expertise to give an opinion about whether Dr. Knobeloch should have advised the Plaintiffs of the black box warning, whether she was prescribed incorrect dosages, whether she suffered an adverse drug reaction and whether or not Dr. Knobeloch failed to diagnose and failed to provide proper treatment for the alleged drug reaction. That was in that ruling.

> And the May 11th ruling dealt with excluding causation testimony by Dr. Kaye. The Court overruled that motion and said that he could testify as to the dosage and whether the overdosage caused the onset of Stevens-Johnson syndrome. I hope that summarized those rulings.

(Aug. 17, 2016 Tr. at 501-03.)

## IV. ANALYSIS

### A. First Alleged Conflict

{¶ 14} For a witness to be competent to provide expert testimony on the issue of liability in a medical malpractice case under Evid.R. 601(D), the witness must be licensed to practice medicine and devote at least one-half of the individual's professional time to active clinical practice in the field of licensure or to its instruction in an accredited school.

{¶ 15} "[T]he purpose of Evid.R. 601(D) is to prohibit a physician who makes his living as a professional witness from testifying on the liability of physicians who devote their professional time to the treatment of patients." *Celmer v. Rodgers*, 114 Ohio St.3d 221, 2007-Ohio-3697, ¶ 23.

{¶ 16} In *Hunt v. Crossroads Psychiatric & Psychological Ctr.*, 8th Dist. No. 79120, (Dec. 6, 2001), the Eighth District Court of Appeals held that a psychiatrist should not have been allowed to render a standard of care opinion because a review of his deposition failed to show that he devoted at least one-half of his professional time to the active clinical practice in his field of licensure.

{¶ 17} Here, the trial court also ruled that Dr. Kaye was not qualified to testify as to the standard of care for pediatric psychiatry. The trial court limited Dr. Kaye's expert testimony to the areas of pharmacology and drugs. These non-standard of care opinions are not subject to Evid.R. 601(D)'s requirements that Dr. Kaye devote at one-least half of his professional time to active clinical practice or to its instruction in an accredited school. Dr. Kaye's incompetence under Evid.R. 601(D) to testify as to the standard of care for pediatric psychiatry did not render him incompetent to testify about non-standard of care topics within his area of expertise, pharmacology and drugs. *See Melvin v. Ohio State Univ. Med. Ctr.,* 10th Dist. No. 10AP-975, 2011-Ohio-3317, ¶ 29 (Evid.R. 601 did not apply where the expert did not offer an opinion on duty and breach or standard of care).

{¶ 18} Dr. Arredondo, on the other hand, did testify that Dr. Knobeloch breached the standard of pediatric care. However, the record shows that Dr. Arredondo met the requirements of Evid.R. 601(D). As noted above, Dr. Arredondo is board certified in psychiatry and neurology, and has been in continuous clinical practice from 1980 until the present with at least some of his practice in adolescent and child psychiatry.

{¶ 19} Having found no conflict with *Hunt*, we find the motion to be without merit.

### B. Second Alleged Conflict

{¶ 20} In their second alleged conflict, appellants assert that this court's decision with respect to the lack of informed consent claim conflicts with the decision in *Culp*. Contrary to appellants' assertion of an alleged conflict, the court in *Culp* did not hold that "a physician's testimony is legally necessary to establish all elements of an informed consent claim where no informed consent is allegedly given." (Mot. to Certify at 7.)

{¶ 21} In *Culp*, the plaintiff was precluded by the trial court from offering expert testimony. Consequently, she failed to present any expert testimony as to any element of her medical malpractice and lack of informed consent claims. Instead, she argued that her claims involved matters within the common knowledge of laypersons, thus obviating the need for expert testimony.

{¶ 22} The Fourth District Court of Appeals stated that "[a] lack of informed consent claim also requires expert testimony." *Id*. at ¶ 71. It then quoted the following from *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, syllabus:

> The tort of lack of informed consent is a medical claim, and therefore expert medical testimony is required to establish both the material risks and dangers inherently and potentially involved with a medical procedure and that an undisclosed risk or danger actually materialized and proximately caused injury to the patient.

{¶ 23} The court of appeals then noted that the plaintiff's memorandum contra to a motion for summary judgment "does not sufficiently explain how her lack of informed consent claim falls within the common knowledge exception." *Culp* at ¶ 84. The court then determined that the allegations that surrounded the plaintiff's lack of informed consent claim did not involve subjects which are within the ordinary, common, and general knowledge and experience of mankind. The court concluded that the common knowledge

exception did not apply and plaintiff needed expert testimony to establish her lack of informed consent claim.

{¶ 24} Appellees in this case presented evidence that Dr. Knobeloch failed to disclose or discuss any risks or dangers with the patient's mother. *R.T. v. Knobeloch*, 2018-Ohio-1596 at ¶ 21. However, unlike the situation in *Culp*, this court noted that there was expert testimony in the record that there was a risk that the drug Lamictal can cause Stevens-Johnson Syndrome and that it was the proximate cause of S.T.'s injuries. What was not required was expert testimony to determine if a non-existent disclosure touched on all material risks.

{¶ 25} We can discern no conflict between our decision and the decision in *Culp.*

## V. CONCLUSION

{¶ 26} Based on the foregoing, appellants' motion to certify conflicts is denied.

*Motion to certify conflict denied.*

KLATT and BRUNNER , JJ., concur.

————————